ALFRED P. ROBINSON, Administrator *de bonis non* of PETER ROBINSON, deceased, *v.* CHARLES TUNNELL, Administrator of ARTHUR MILBY, deceased, and ter-tenants.

To prove the mere possession of real estate, parol evidence is always competent.

A receipt and release by two of the heirs at law, one of whom was the administrator of the deceased plaintiff in a judgment, to one of the ter-tenants of the defendant in it, of his portion of the land bound by the lien of the judgment on his paying his proportion of it, will not be presumed or construed by the court in a suit by such administrator on the judgment against the ter-tenants, to have been executed by him in his representative capacity as such administrator; nor will it be admitted in evidence as such, without the consent of the opposite party, as a payment *pro tanto* upon the judgment.

A judgment after the lapse of twenty years without any payment, or process upon it, or any acknowledgment of it in the meantime as a subsisting debt, or any explanation of its so remaining, will be presumed in law to be paid. This presumption, however, may be rebutted by facts and circumstances which it is incumbent on the party seeking to enforce the payment of it to prove and establish, such as the known insolvency, or utter inability of the defendant to pay it in the meanwhile. But a writ of *fieri facias*, or any other process of execution issued upon it, and particularly, when the latter has proceeded to a levy on the goods and chattels, lands and tenements of the defendant, and a sale thereof and the application of a portion of the proceeds to a payment upon it, is not only strong, but conclusive evidence to rebut such presumption.

The peaceable possession of lands for twenty-seven years by the ter-tenants, is no defence to a *scire facias* against them on a judgment recovered against the party from whom they derived their title to them. Because such possession was not adverse to the claim of the plaintiff in the judgment, who had but a lien, and no right of entry in the meantime upon the lands in question.

It is not necessary in this State that there should be a *scire facias* and a return of *nihil* against the administrator of a deceased defendant in a judgment, before a *scire facias* can issue upon it against his heirs at law and ter-tenants; neither is it necessary to join the heirs at law with the ter-tenants in such a writ. But the administrator and ter-tenants may be joined in such a writ.

*Scire facias* on a judgment in the Superior Court in and for Sussex County entered on the 27th day of December,

1834, at the suit of Peter Robinson against Arthur Milby for $1,999 debt and $3 77 costs, with interest from the 11th of March preceding. The pleas in the case were withdrawn with the exception of *nil debent* and by agreement of counsel, issue was joined upon it with leave to the defendants to prove and make any defence under it of which they could avail themselves under any special plea if filed, and the case was to be tried upon its merits. A writ of *fieri facias* had been issued upon the judgment returnable to the October Term 1845, and on that a writ *venditioni exponas* returnable to the April Term ensuing, under which the goods of the defendant had been taken in execution, advertized and sold, and his lands were also inquired on and condemned and sold, and the proceeds applied to a prior judgment, execution and levy of the Farmers' Bank against him, which left, however, a balance of $1,588 66 after paying the same, which was applied to the judgment now in question. The plaintiff then put in evidence a deed dated March 25th, 1835, from Arthur Milby to Peter S. Parker for seventeen acres of land adjoining Milton; and also the record of the Orphans' Court of the county to prove that eight and three quarter acres of the tract was afterward under an order of that court, by deed dated March 22d, 1853, conveyed by Theodore W. Parker, administrator of Peter S. Parker, deceased, to Charles Vaughan, and the deed of the latter to show that the portion last mentioned was conveyed back again to the former in the month of April following. A witness was then called to prove that the land conveyed by the defendant in the judgment to Peter S. Parker was afterward sold in allotments, and that several of the ter-tenants on whom the writ of scire facias had been served in this case, were then in the possession of, and living on, parts of it.

*C. M. Cullen*, for the defendants, objected that it was incompetent for the plaintiff to prove a title to land by parol evidence. No paper title had been produced and

no proof had been offered of any deed, or conveyance to Abel Vent, a party defendant to the suit and one of the ter-tenants for whom he appeared, for any part of the lands in dispute.

*J. A. Bayard,* for the plaintiff, only proposed to prove that Abel Vent was in possession of a part of the land in question, and cared nothing about his legal title to it. Having proved that the title to it was in Arthur Milby at the time of the rendition of the judgment against him and that he afterward sold and conveyed it to others, it was sufficient for his purposes and the purposes of this suit, so far as the ter-tenants were concerned, simply to prove that they were then in the possession of it, or of parts of it, and to prove that fact parol evidence was admissible.

*By the. Court:* For the purpose stated, the evidence offered is clearly admissible. To prove possession merely of real estate, parol evidence is always competent. Even adverse possession for twenty years when it amounts to a legal defence and constitutes a legal acquisition of land, can in general only be proved by parol evidence; and if the ter-tenants in the present case have any other, or better title to the premises in question, than possession merely, it is for them to establish such a title by the proper proof.

The witness then proceeded and proved the possession of parts of the tract in question by the ter-tenants and defendants in the suit. Two deeds, the first dated September 14th, 1833, and the second January 16th, 1834, from Arthur Milby and wife to Peter Parker Sr. for one acre of land each, and that the same were then in possession of certain of the ter-tenants and defendants in the action, was likewise given in evidence by the plaintiff. The plaintiff here rested his case.

The defendants then offered in evidence a paper purporting to be a receipt under the hands and seals of Edward Wootten and Alfred P. Robinson to Elzey Wilson a

purchaser and owner of part of the land bound by the judgment in question, dated January 30th, 1854, for $228, paid by him to them as his part and proportion of the debt due and payable as a balance on the judgment, with a clause releasing that portion of the land bound by it which had been bought by him, in consideration of the payment so made by him, from the lien of the judgment. The receipt and release were executed and delivered by the former, as the heirs at law of Peter Robinson, deceased.

*J. A. Bayard*, for the plaintiff, admitted the payment of the amount receipted for and was perfectly willing to give a credit for it on the judgment, but objected to its going in evidence as a release of the land purchased by Wilson, because this was a suit by the administrator of Peter Robinson, deceased, in his representative capacity exclusively, who alone as such administrator, had any authority in law to release or extinguish the lien of the judgment upon it by any such instrument, and the release of the heirs at law therefore, of course, could not affect, or take away his right and power as such administrator, to have execution on the judgment for the collection of the balance due upon it.

*C. M. Cullen*, (W. Saulsbury with him) contended that Alfred P. Robinson, one of the parties who signed, sealed and delivered the paper and received the payment upon it, being in fact the administrator, as well as one of the heirs at law of Peter Robinson, deceased, and having no formal authority in the latter character, but full and ample, as well, the sole and exclusive power and authority in his former and representative capacity, to release the land bought by Wilson from the lien of the judgment, the court would presume and construe the payment made by him for that purpose, to have been made to Robinson in his representative capacity as administrator merely, particularly as that was the only character in which he had any legal authority either to receive the payment of the

money, or to release the land bought by Wilson from its
liability thereafter on account of the judgment, according
to the obvious meaning, intention and understanding of
all the parties at the time to it, as was perfectly manifest
from the nature of the transaction itself; for the court
would not allow such an understanding to be defeated or
violated, notwithstanding he failed to execute the receipt
for the money and the release of the land from the judg-
ment in consideration of it, as administrator in terms, but
united with another as an heir at law with himself in the
judgment merely in doing it. As an act done according
to the design and understanding of all the parties at the
time, it was in its legal as well as equitable aspect, sub-
stantially a payment to him alone as administrator, and
the release thereupon executed by him in consideration
of it, was also substantially executed by him alone in the
same character.

*J. A. Bayard :* As he had said before, he was perfectly
willing to credit the judgment with the amount of the pay-
ment, and to give the defendants *pro tanto* the benefit of
it as a credit, although it was not even a legal and formal
payment on the judgment, and was therefore no defence
to this suit, which was by the administrator for an execu-
tion as administrator on that specific judgment, because
it was not paid to him as such, was not received, or re-
ceipted for by him as such, nor could there be any well
founded pretension by any one who will look at it, that
the concluding and releasing clause was executed by him
as administrator.

*By the Court :* By the admission of the plaintiff it can
go in evidence as a receipt for so much money paid on
the judgment at that time and reducing the amount then
due upon it *pro tanto ;* but for no other purpose could
they hold it to be strictly legal and admissible evidence
in the present action. The Chief Justice, however, added
the remark that it had always been considered since his

admission to the bar, that it was competent for a judgment creditor to release to a purchaser any part of the land bound by the judgment, from the lien of it, without its affecting or impairing the validity of the lien as to the balance of the land in the hands of other purchasers.

The defendants then proved that the ter-tenants had been in the peaceable and uninterrupted possession of the parts of the land held by them respectively for a period of twenty-five years.

*J. A. Bayard :* The judgment was rendered on the 27th day of December, 1834, for $1,999 with interest thereon from the eleventh of March preceding and costs $3 77. On the 17th of August, 1845, a *fi. fa.* was issued upon it returnable to the October Term of that year, and a writ of *venditioni exponas* on that returnable to the ensuing April Term, on which the goods and chattels of the defendant were sold and the proceeds applied to a prior judgment, execution and levy in favor of the Farmer's Bank against Milby. His lands, however, were afterward advertized and sold on the *venditioni exponas* and the sum of $1,588 66 arising therefrom was applied to the judgment then in question, and crediting it with this amount, the balance with interest upon it and the costs constituted the demand of the plaintiff in the suit.

*W. Saulsbury :* To entitle the plaintiff to recover in such a case, there should have been some proof produced of a recognition of the existence of the judgment in question, by the ter-tenants within the twenty years preceding the institution of the suit; and yet no such admission, or recognition had even been attempted to be proved on the trial. As to the legal effect and operation of a judgment in this State against an executor or administrator, it could only bind such real estate as the testator or intestate died seized and possessed of, and such lands alone were liable for the payment of his debts on a judgment recovered against his executor or administrator. This was an ac-

tion against the administrator of Arthur Milby and certain ter-tenants, or occupiers of lands and premises sold and conveyed by him in his life-time by a good and valid deed of bargain and sale in fee simple to Peter S. Parker, and by the latter sold and conveyed in like manner to the ter-tenants in this case. Could there be any pretence then for saying that Arthur Milby died seized and possessed of any portion of the premises in question ? The whole tract was worth when conveyed to Parker about $600 ; but it had since been sold in small lots to the ter-tenants who have built houses upon several of them which have much enhanced the present value of the property.

Milby died in 1845, and the execution which had been referred to and given in evidence, was afterward sued out upon this judgment against him, without any administration having been granted on his estate, or any *scire facias* having been issued on the judgment to make any other person a party to it, because by relation to the test day of the execution and a fiction of law, it was presumptively issued before his death, and upon the *venditioni exponas* which followed it, the lands of which he actually died seized and possessed in law or in fact, consisting of two farms were sold and the sum of $1,588 66, a part of the proceeds of them, was applied to this judgment. But was that sufficient to rebut the presumption of its payment arising from the lapse of time, without any proof of an admission or acknowledgement of the existence of the judgment by the parties then sought to be charged with it, especially when it was considered that Milby had then been dead some ten or twelve years, without any administration on his estate, and, of course, without any one then to question or resist it ? He would respectfully submit that it was not sufficient for that purpose. In the case of *Burton's Admr. v. Cannon*, 5 *Harr.* 14, this court had decided that a judgment of more than twenty years standing, without any payment upon it, or any acknowledgement of it as still due and unpaid in the meanwhile, is presumed in law to have been satisfied ; but that the

presumption may be rebutted by proof of an express acknowledgement to the contrary, or of any payment on account of either the principal or interest of it by the defendant in the meantime. But there had been no such proof offered in the present instance, and no case had been cited to show that such a proceeding as that which he had just referred to, was sufficient to rebut the presumption of payment of such a judgment after the lapse of twenty years.

*J. A. Bayard:* The only ground of defence seems to be the presumption of payment arising from lapse of time. The counsel on the other side contend that the plaintiff having slept upon his rights for more than twenty years, was barred of his right to recover as the case then stood before the court and the jury. He thanked them for that word and would admit that if such had been the case, he would be barred. But it was simply because he had not slept upon his rights for twenty years, that he was not barred. A payment on the judgment, or an acknowledgement of its subsistence in the meanwhile by the defendant in the judgment, it was admitted, however, on the other side, would unquestionably rebut the presumption and remove the bar. But what stronger evidence could there be of that character, than a regular execution sued out in the meantime on the judgment in question, and a levy and sale thereunder of the goods and chattels, lands and tenements of the defendant and the due application of a large amount of the proceeds of the sale to such judgment, to rebut the presumption of its satisfaction from lapse of time merely ? For that purpose it was certainly evidence of the very best and most conclusive character.

*The Court, Gilpin, C. J.,* charged the jury: The object of the writ in this case which is called a *scire facias,* sued out of this court by the administrator of Peter Robinson, deceased, against the administrator of Arthur Milby, de-

ceased, and ter-tenants on a judgment recovered here at the suit of the former against the latter in the life-time of each of those gentlemen, on the 27th day of December, 1834, for $1,999 with interest from the 11th day of March preceding and $3 77 costs upon it, was to call upon the defendants in the suit to show cause wherefore a writ of execution should not be issued thereon to sell certain lands which were alleged to be in their possession and bound by the judgment in the life-time of both Robinson and Milby, the original parties to it. The jury had heard the evidence in regard to the matter just stated, and it would be for them to determine whether the lands referred to in the possession of the several ter-tenants defendants in the suit, were the property of and belonged to Arthur Milby after the judgment was rendered against him; and whether the lands now in possession of those defendants and in dispute between the parties to the present action, constituted any part of the real estate of Arthur Milby after the judgment was obtained against him. If such was the case, the judgment would constitute a lien upon them and they would be bound by it in the possession of any person, or persons who might afterward purchase or acquire them, or any part of them; unless, on the contrary, it had been proved by the evidence in the case to the satisfaction of the jury, that the judgment had in the meantime been paid, released or discharged, or was no longer a valid and subsisting debt and judgment of record for any reason, against the lands of the whole or any one of the defendants mentioned, for any sum appearing upon it, or claimed under it. If the latter should be the conclusion to which they should arrive after considering all the evidence before them in the case applying the instructions which the court was about to give them in regard to the principles of the law applicable to it, it would be their duty to return a verdict for the defendants.

But the court was bound to say to them that no legal, or valid release in law of any portion of the lands in

question, from the lien of the judgment had been proved
or given in evidence before them, because what purported
to be the receipt and release executed by heirs at law of
Peter Robinson, deceased, and which was relied upon as
a partial defence to the action by the defendants, was not
such an instrument as would constitute a valid and suffi-
cient release in law, and a legal defence to the present
action, nor could it have the legal effect to discharge, or
release any portion of the lands bound by the judgment
from the lien of it, in a suit brought as this was by the
administrator of Peter Robinson upon it, and who was
the only party as such administrator, who in contempla-
tion of law could rightfully and properly receive payments
upon it, or execute a valid release of any portion of the
lands from the lien or effect of it.   The plaintiff, however,
consented to admit it in evidence as proof of payment by
Elzey Wilson of $228 on the 30th day of June, 1854, upon
the judgment, but for no other purpose, and the jury
would therefore consider and treat it as an acknowledged
payment and credit on the judgment of the date men-
tioned, but to that extent merely, and no further.

The principal defence, however, relied upon by the de-
fendants was the presumption of payment arising from
the time which had elapsed since the judgment was ren-
dered, which was more than twenty years ago.   On that
point the court would say to them that a lapse of twenty
years or more after the recovery of a judgment, without
any payment or process upon it, or recognition or ac-
knowledgment of it within twenty years as a subsisting
debt, and without any explanation of its so remaining,
would afford in law a presumption of its having been
paid in full and discharged.   But there were facts and
circumstances when proved, and which it was incumbent
on the party seeking to enforce the collection and pay-
ment of such judgment to establish, which would explain
it, and which would suffice also in law to rebut the legal
presumption of payment arising in this manner, and
which it was always allowable to do, when it could be

done by such proof. For it is at best, only presumptive, and never positive proof of the payment of it. Among the facts and circumstances which will suffice when proved to the satisfactton of the jury, to rebut such a presumption of payment, may be mentioned the known insolvency and utter inability in the meanwhile of the defendant in the judgment to pay the debt, or his recognition or acknowledgement that it had not been paid, or a payment made by him in the meantime of any portion of the principal or interest of it. Also the issuing of a writ of *scire facias*, or any other execution process upon the judgment in the meanwhile by the plaintiff will have the same effect; and accordingly the court felt warranted in saying to them in direct terms, that the writs of *fieri facias* and *venditioni exponas* which had been issued on the judgment in question and the sale thereon of the goods and chattels, lands and tenements of the defendant in it and the application of the balance of the proceeds thereof after paying prior judgments, executions and levies against him, amounting to $1,588 66, being record evidence and having been proved by the production of the records thereof in this court in the case, was not only strong evidence of such a character as the court had just described, but was in its very nature conclusive evidence to rebut and refute any presumption or pretence that the judgment had been paid in the meantime, predicated solely upon the ground of the long period of time, some twenty-seven years, which had elapsed since the rendition of it. Nor was it any defence in law to the action, or the right of the plaintiff to recover in it, that the defendants, the tertenants, had been in the peaceable and uninterrupted possession of the premises in question for a period nearly as long, and over twenty years, provided the jury should be satisfied from the evidence that such had been the case. Because such a possession, although peaceable and uninterrupted, was not inconsistent with any claim, or adverse to any right which the plaintiff had against the defendant in the judgment, which was simply a lien in the mean-

while upon his lands, which the latter had a perfect right to alienate and sell and convey to them or any other person subject to the lien, and which gave the former no right or power whatever to enter upon them, or in any manner to disturb the possession of them, except by due process of law issued upon his judgment to sell them for the payment of it.

It was. suggested by the counsel for the defendants during the progress of the trial, that the heirs at law of Arthur Milby, as well as the ter-tenants, should have been made parties defendant also in the case. At common law and by the usual practice in the country whence we derived it, no writ of *scire facias* could be had against the heirs and ter-tenants of lands of a deceased defendant in a judgment, until after a return of *nihil* to a *scire facias* against his legal representatives, his executors or administrators ; nor were the ter-tenants alone chargeable under such a writ, until the heirs had been summoned, or there had been a return that there was no heir, or he had no lands subject to the judgment; and it was therefore usual and the most approved method there to join the heirs at law and the ter-tenants in one and the same writ of *scire facias*. But here under the statute of the State which provides that such writ may be sued by and against the parties to the judgment and also by and against any other persons entitled, or liable to the execution thereof,whether as executors, administrators, heirs, ter-tenants, or otherwise, the practice has been different and the writ has often been sued as it was in the present case. Besides, under our system a judgment rendered on the verdict of a jury, inquisition, or the report of referees on a rule of reference out of court against an executor or administrator, constitutes a lien on the lands of the deceased, and therefore there was more reason and propriety in such cases in joining such a party with the ter-tenants in the writ, than there would be at common law. And this would perhaps serve to explain and remove another objection raised by the counsel for the defendants in their argument

to the court, which was that this being an action against the administrator of Milby a judgment recovered against him, could only bind such lands as Milby died seized and possessed of, whereas the lands in question were all sold by him, and of course, prior to his death. If this were a suit upon the original cause of action on which the judgment in question was obtained against him, a judgment now recovered in it, would not bind the lands sold before his death. But the judgment on which this action was founded was obtained against him in his lifetime, and if he then, or any time afterward, was seized and possessed of the lands in question, it became a lien upon them and will continue a lien upon them, if judgment is recovered in this case, for this is but a continuation of that suit to recover the original debt, or the balance due upon it.